UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEON LIPPETT,<br><br>                         Plaintiff,<br><br>v.<br><br>NELSON DUNCAN,<br><br>                         Defendant. | Case No. 21-cv-11289<br>Honorable Robert H. Cleland<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 25) AND TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 27)**

## I.    Introduction

Plaintiff Leon Lippett, a prisoner confined at the Macomb Correctional Facility, filed this pro se civil rights action under 42 U.S.C. § 1983.  ECF No. 1.  Lippett alleges that Defendant Nelson Duncan, a nurse, delayed medical treatment in violation of the Eighth Amendment and retaliated against Lippett in violation of the First Amendment for filing a lawsuit against Duncan's coworkers.  *Id.* at PageID.1-7.  The Honorable Robert H. Cleland referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 10.

Lippett moves for summary judgment on his retaliation claim, and Duncan moves for summary judgment on both claims.  ECF No. 25; ECF No. 27.  The Court **RECOMMENDS** that Lippett's motion for partial summary judgment be **DENIED** and that Duncan's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**.

## II.    Background

Since Lippett's 2017 hospitalization for a severe foot infection, he has had recurrent infections and fevers of unknown origins.  ECF No. 25, PageID.196-202; ECF No. 27-2, PageID.297-298.  In 2018, Lippett filed a lawsuit against healthcare providers based on the events leading to his hospitalization; that action remains pending against one defendant.  *See generally Lippett v. Corizon Health*, No. 2:18-cv-11175 (E.D. Mich.).

In June 2018, Lippett complained of a fever, chills, a headache, and dizziness.  ECF No. 27-2, PageID.307-308.  An officer called healthcare and relayed Lippett's symptoms to Duncan, who said that Lippett needed to send a kite in the morning.  *Id.* at PageID.308-309.  Based on the symptoms, Duncan determined that he could finish treating other inmates since Lippett did not need immediate care.  ECF No. 27-3, PageID.336.  An hour later, Duncan said he could see Lippett, and Lippett went to healthcare accompanied by Officer Alarica Nelson and his bunkmate

2

Earnest Jackson.  *Id.* at 336-337; ECF No. 27-2, PageID.311; ECF No. 25, PageID.213.  Nelson and Jackson were present for the entire visit.  ECF No. 25, PageID.213; ECF No. 27-2, PageID.314.

The parties' accounts of the visit differ.  Lippett claimed that Duncan spoke to him in an aggressive tone and accused him of making himself sick.  ECF No. 25, PageID.242-243; ECF No. 27-2, PageID.314-315.  Duncan took Lippett's temperature several times, which fluctuated from 100 to 103.9 degrees.  ECF No. 25, PageID.242-243; ECF No. 27-2, PageID.314.  Given Lippett's history of recurrent infections, Duncan examined his feet and applied an antifungal cream but did not treat the fever symptoms.  ECF No. 25, PageID.243; ECF No. 27-2, PageID.314.

Duncan asserted that he was standing in a hallway near an exam room when Lippett arrived in the lobby.  ECF No. 27-3, PageID.337, 340.  Through the medication window between the exam room area and the lobby, Duncan allegedly overheard Lippett say to Jackson, "I'm doing all this tonight, as part of my lawsuit."  *Id.*  Lippett denied making this statement.  ECF No. 25, PageID.243.  Duncan denied asking Lippett harassing questions; instead, he asked about his symptoms.  ECF No. 27-3, PageID.337.  Duncan reported that Lippett's temperature was 102 degrees but that it dropped to 99.9 degrees after five minutes and to 98.9

degrees after another ten minutes.  ECF No. 25, PageID.212-213.  Duncan examined Lippett's feet and applied anti-fungal cream, gave him Tylenol, and sent him to his cell with instructions to follow up with healthcare in the morning.  *Id.*; ECF No. 27-3, PageID.338.  Duncan noted in Lippett's medical chart that he overheard Lippett say that he was "doing all this" for his lawsuit.  ECF No. 25, PageID.213.

Lippett asserts an Eighth Amendment claim, alleging that Duncan was deliberately indifferent by delaying his medical treatment for an hour. ECF No. 1, PageID.10-12.  He also asserts that Duncan retaliated against him in violation of the First Amendment for filing the 2018 lawsuit against his coworkers.  *Id.* at PageID.12-15.  Lippett seeks summary judgment on his retaliation claim, and Duncan seeks summary judgment on both claims.

### III.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a

4

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotation marks omitted). "[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Id.* (internal quotation marks omitted). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560.

**B.**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).  Because the government must provide medical care for those it has incarcerated, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," and thus violates the Eighth Amendment.  *Estelle*, 429 U.S. at 103-04.  But a plaintiff must show more than a mere failure to provide adequate medical care to prove a constitutional violation.  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).  "A constitutional violation arises only when a prison official exhibits deliberate indifference to a prisoner's serious illness or injury that can be characterized as obduracy and wantonness rather than inadvertence or" good-faith error.  *Id.* (cleaned up).

To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  For the objective component, Lippett must show that Duncan's acts or omissions deprived him of "the minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm."  *Id.*  The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but disregarded

"an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

### 1.

Duncan argues that Lippett cannot prove the objective component because the hourlong delay in treatment did not pose a substantial risk of serious harm.  ECF No. 27, PageID.279.  To satisfy the objective component of a deliberate indifference claim, a plaintiff complaining of a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (cleaned up).  Lippett has not produced such evidence and has admitted that the hourlong delay had no detrimental impact.  ECF No. 27-2, PageID.329.  Thus, he cannot satisfy the objective component under this standard.

Lippett argues that he need not produce verifying medical evidence because he had an obvious need for medical attention.  ECF No. 31, PageID.404-406.  The "verifying medical evidence" standard applies only to "those claims involving minor maladies or non-obvious complaints of a serious need for medical care."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d

890, 898 (6th Cir. 2004).  It does not apply when the medical need at issue

"is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention."  *Id.* at 897 (cleaned up).  A plaintiff who had an

obvious medical need must "show that he actually experienced the need for

medical treatment, and that the need was not addressed within a

reasonable time frame."  *Id.* at 900; *see also Lippett v. Corizon Health, Inc.*,

No. 18-cv-11175, 2020 WL 532399, at *9 (E.D. Mich. Feb. 3, 2020).

Lippett's fever, chills, headache, and dizziness did not pose an

obvious need for immediate medical attention.  Lippett had a history of

those symptoms, but they resolved within 24 to 72 hours with routine

treatment such as IV fluids and Tylenol.  ECF No. 25, PageID.196-202;

ECF No. 27-4, PageID.342.  No evidence suggests that Lippett's symptoms

in June 2019 were any different or posed a risk of serious harm, especially

since he offered to return to his unit when Duncan allegedly accused him of

making himself sick.  *See* ECF No. 27-2, PageID.315; *see also Estate of*

*Goode v. Cnty. of Genesee*, No. 12-10340, 2015 WL 2412196, at *8 (E.D.

Mich. May 21, 2015), *rev'd in part sub nom. Goode v. Berlanga*, 646 F.

App'x 427 (6th Cir. 2016) ("Fevers occur for a multitude of reasons and the

fact that an inmate was known to be feverish does not present a condition

so obvious that even a lay person would consider it a 'serious medical condition' that demands immediate attention." (cleaned up)).

Even if Lippett's medical need was obvious, he has not shown that it was not addressed within a reasonable timeframe.  No healthcare professional has told Lippett that Duncan's treatment was inappropriate.  ECF No. 40-1, PageID.519.  Given Lippett's alleged symptoms, an hourlong delay is not unreasonable.  *See Wright v. Martin*, No. 17-12014-A, 2017 WL 9324512, at *4 (11th Cir. 2017) (a delay of less than two hours when the plaintiff complained of chills coughing, a fever, and headache was not constitutionally intolerable).  Lippett argues that the delay was unreasonable because the prison's protocols required nurses to evaluate prisoners with a fever and headache immediately.  ECF No. 31, PageID.406, 424.  But "failure to follow administrative policies alone does not itself constitute deliberate indifference."  *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 407 (6th Cir. 2015); *Ward v. Corizon Health, Inc.*, No. 15-cv-11902, 2016 WL 4224973, at *6 (E.D. Mich. July 12, 2016), *adopted*, 2016 WL 4191730 (E.D. Mich. Aug. 9, 2016).  Lippett has failed to show that Duncan's alleged failure to follow protocol was unreasonable under the circumstances.

Lippett also argues that Duncan violated a standing order requiring nurses to contact a medical provider if a prisoner with a fever has a temperature exceeding 103 degrees or has other symptoms or a complex medical history.  ECF No. 31, PageID.406, 422.  But that argument concerns the adequacy of care Duncan provided.  Lippett's complaint does not challenge the adequacy of care; it only alleges that Duncan unconstitutionally delayed medical treatment.  ECF No. 1, PageID.10-12. Parties cannot add pleadings through arguments in their response brief. *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) ("The pleading contains no such allegation, and the plaintiffs may not amend their complaint through a response brief.").  The Court declines to consider this argument.

In sum, Lippett has produced no evidence proving the objective component of deliberate indifference.

**2.**

Duncan also argues that Lippett cannot prove the subjective component because he did not recklessly disregard a known risk of an excessive risk to Lippett's health or safety.  ECF No. 27, PageID.281.  The Court agrees.

10

Duncan was one of two nurses on duty when Lippett complained of a fever.  ECF No. 27-3, PageID.336.  When Duncan learned of Lippett's symptoms, he was providing care for other prisoners.  *Id.*  He gathered the necessary information to triage the situation and, based on his training and experience, determined that Lippett was not experiencing a life-threatening condition requiring immediate care.  *Id.*  When Duncan finished treating the other prisoners an hour later, he requested that Lippett come to the healthcare unit.  *Id.* at PageID.336-337.

Lippett contends that Duncan's assessment was deliberately indifferent given his medical history.  ECF No. 31, PageID.408.  He also argues that Duncan suspected that Lippett's fever was self-induced and claims that the theory was baseless.  ECF No. 31, PageID.408-410, 427-428, 432, 434.  These arguments present a mere disagreement with Duncan's medical judgment, which does not give rise to an Eighth Amendment claim.  *See Rhinehart*, 894 F.3d at 744 ("A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."); *see also Moore v. Spear*, No. 5:19cv00186, 2019 WL 3824003, at *3 (E.D. Ark. July 30, 2019), *adopted*, 2019 WL 3824019 (E.D. Ark. Aug. 14, 2019)

11

(disagreement with the judgment that a condition was not urgent did not give rise to an Eighth Amendment claim).

Lippett also disputes whether Duncan was treating other prisoners, claiming that Duncan's discovery response was evasive and that Duncan did not produce a call-out schedule showing that other prisoners were treated. ECF No. 31, PageID.411. These arguments lack merit. Duncan stated that "there were multiple inmates seen before and after Prisoner Lippett was in health care around that time." ECF No. 31, PageID.443. There is nothing evasive about this statement. And Duncan has offered his affidavit stating that other prisoners were in healthcare. A party is the master of its case and is entitled "to prove its case by evidence of its own choice." *United States v. George*, No. 5:18-CR-00023, 2019 WL 79362, at *1 (W.D.N.C. Jan. 2, 2019). Had Lippett wanted to disprove Duncan's affidavit, he could have obtained the call-out schedule during discovery and presented it as his own proof. He did not.

Thus, Lippett cannot prove the subjective component. His Eighth Amendment claim should be dismissed.

## C.

Lippett and Duncan both seek summary judgment on the retaliation claim. To succeed on his retaliation claim, Lippett must show that: (1) he

12

was engaged in conduct protected by the First Amendment; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [Lippett's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Sixth Circuit imposes a "high burden" for the third factor; there must be some evidence of retaliatory motive, and conclusory allegations are insufficient. *Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010). If the plaintiff proves those three factors, the burden shifts to the defendant; if he "can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.

The parties do not dispute that Lippett engaged in protected conduct by filing the 2018 lawsuit. Lippett alleges that Duncan took three adverse actions: (1) delaying his medical treatment, (2) verbally harassing him, and (3) falsely stating in the medical chart that Lippett said he was faking his symptoms for his lawsuit. ECF No. 1, PageID.13; ECF No. 31, Page ID.413. The Court addresses each of the alleged adverse actions in turn.

13

## 1.

A delay or denial of medical care can constitute an adverse action supporting a retaliation claim.  *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014).  But *de minimis* injuries and minor delays in healthcare do not.  *Thurmond v. Thomas-Walsh*, No. 18-CV-409, 2019 WL 1429559, at *11 (S.D.N.Y. Mar. 29, 2019); *see also Gully v. Hundley*, No. 18-cv-539, 2020 WL 1503577, at *5 (S.D. Ill. Mar. 30, 2020) ("A delay of 20 minutes or even 60 minutes to get to the healthcare unit—with no evidence of what caused the delay, would not rise to the level of a constitutional violation." (cleaned up)); *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 447 (S.D.N.Y. 2006) (a delay of a few hours in giving a prisoner one dose of an over-the-counter pain reliever was *de minimis*).  Duncan's hourlong delay in treating Lippett's non-urgent condition is so minor that it does not amount to an adverse action.

Nor can Lippett prove that the delay was in retaliation for the 2018 lawsuit.  Lippett maintains that Duncan refused to see him immediately because he believed that Lippett was faking his symptoms as part of his 2018 lawsuit.  ECF No. 31, PageID.414-415; *see also* ECF No. 25, PageID.213.  But even if Duncan delayed treatment for that reason, that

does not show retaliatory intent.  Rather, it shows only that Duncan delayed treatment because he believed Lippett was malingering.

Even if Lippett showed that retaliation was a motivating factor for the delay, Duncan has shown that he would have taken the same action without the 2018 lawsuit.  Lippett's care was delayed for an hour because Duncan was treating other prisoners, and he requested that Lippett come to healthcare when he completed that work.  ECF No. 27-3, PageID.336-337.  Lippett has not rebutted that evidence.  Since Duncan has shown a non-retaliatory motive for his actions, he is entitled to summary judgment on the retaliation claim stemming from the delay in treatment.  *See Good v. Walworth*, No. 17-10140, 2020 WL 2045399, at *6-7 (E.D. Mich. Mar. 30, 2020), *adopted*, 2020 WL 2043650 (E.D. Mich. Apr. 28, 2020) (summary judgment is proper when a defendant has shown legitimate, non-retaliatory reasons for an adverse action).

## 2.

Lippett maintains that Duncan verbally harassed him during the examination.  Lippett stated that Duncan spoke "in an aggressive tone," asked him what he did to make himself sick, and implied that his symptoms were self-induced.  ECF No. 25, PageID.242-243; ECF No. 31, PageID.417.  Jackson also stated that Duncan harassed Lippett by

15

speaking in a disrespectful tone and accusing him of faking his illness.
ECF No. 25, PageID.246.  Duncan denied harassing, yelling at, or
degrading Lippett and said he only asked questions about Lippett's
symptoms.  ECF No. 27-3, PageID.337.  Even viewing the facts in Lippett's
favor, Duncan is entitled to summary judgment on this claim because
verbal harassment and minor threats are not adverse actions giving rise to
a retaliation claim.  *See Flowers-Bey v. Gibbons*, No. 18-10899, 2018 WL
3436776, at *2 (E.D. Mich. July 16, 2018); *Torres v. Schafer*, No. 1:20-cv-
257, 2020 WL 1861872, at *5 (W.D. Mich. Apr. 14, 2020).

### 3.

Lippett also contends that Duncan retaliated against him by falsely
stating in the medical chart that he overheard Lippett say he was faking his
symptoms for his 2018 lawsuit.  Lippett maintains that this statement
threatens his health and safety, since other healthcare providers who see it
may deny him treatment believing that he is faking his symptoms.  ECF No.
1, PageID.13.

It is undisputed that Duncan noted in the medical chart that he
overheard Lippett say he was "doing all this" as part of his 2018 lawsuit.
ECF No. 25, PageID.213.  Duncan reaffirmed in his affidavit that he heard
Lippett make that statement.  ECF No. 27-3, PageID.337.  Yet Lippett

16

denied doing so, and Nelson and Jackson denied hearing Lippett make that statement.  ECF No. 25, PageID.208-209, 243.  Duncan claims he did not know about the 2018 lawsuit before allegedly overhearing Lippett's comment, so his reference to the lawsuit in the medical chart shows that Lippett must have made the statement.  ECF No. 27, PageID.289; ECF No. 27-3, PageID.337.  But Lippett testified that before the events at issue occurred, he overheard Duncan say to another nurse that Lippett was lying about the claims in the 2018 lawsuit.  ECF No. 27-2, PageID.303.[1]  Thus, whether Duncan falsely included that statement in the medical chart is a factual question.

While false information in prison records does not generally give rise to a constitutional claim, "a prisoner may challenge false records if the false records were created in retaliation for a prisoner's exercise of their protected First Amendment rights."  *Beaton v. California*, No. 1:19-cv-00952, 2019 WL 5566058, at *4 (E.D. Cal. Oct. 29, 2019), *adopted*, 2020 WL 1046094 (E.D. Cal. Mar. 4, 2020); *Benitez v. Locastro*, No. 9:04-CV-

---

[1] Duncan disputes Lippett's identification of him as the speaker since Lippett did not see him.  ECF No. 27, PageID.269 n.2, 288 (citing ECF No. 27-2, PageID.303-304).  But Lippett was qualified to make this identification, as he stated he was familiar with Duncan's voice from medication lines.  ECF No. 27-2, PageID.303; *United States v. Simms*, 351 F. App'x 64, 69 (6th Cir. 2009).

423, 2008 WL 4767439, at *11 n.15 (N.D.N.Y. Oct. 29, 2008).  Duncan

argues that the allegedly false statement is not an adverse action because

Lippett offers only unsupported speculation that it resulted in harm.  ECF

No. 27, PageID.286-288.  But a false prison record such as a misconduct

ticket need not cause tangible harm; instead, it is enough to show that the

plaintiff faced a threat of harm.  *Maben v. Thelen*, 887 F.3d 252, 266 (6th

Cir. 2018) ("When deciding whether the issuance of a misconduct ticket

rises to the level of an adverse action, we look to both the punishment

[plaintiff] could have faced and the punishment he ultimately did face.");

*Scott v. Churchill*, 377 F.3d 565, 571 (6th Cir. 2004) ("The mere potential

threat of disciplinary sanctions is sufficiently adverse action to support a

claim of retaliation." (cleaned up)).

Lippett claims that the falsified medical chart could interfere with his

ability to obtain medical care.  "Interfering with a prisoner's medical

treatment may constitute adverse action that would deter a prisoner of

ordinary firmness from exercising his right to speak out."  *Jones v. Mathai*,

No. 06-11925, 2008 WL 2570776, at *9 (E.D. Mich. June 24, 2008).  Thus,

the possibility that the allegedly false note could interfere with Lippett's

medical care is enough to show a potential chilling effect on protected

activity.  And Lippett testified that since Duncan made the note in his chart,

18

healthcare staff have failed to refer him to an infectious disease specialist despite a podiatrist's recommendation and delayed treatment of a foot infection for several days.  ECF No. 27-2, PageID.316-322.  While Lippett admitted that he has no proof that these instances were motivated by the note in his medical chart, he has shown that the adverse action alleged is more than *de minimis* and must be evaluated by a jury.  *Id.*; *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ("In most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." (cleaned up)).

Duncan contends that Lippett cannot show that the allegedly false statement was adverse because it did not actually deter him from engaging in protected conduct.  ECF No. 27, PageID.287.  Duncan observes that Lippett continues to pursue the 2018 lawsuit and has filed this lawsuit and new grievances.  *Id.*  But whether an action would deter a person of ordinary firmness from engaging in protected activity is an objective test. *Horton v. Greene*, No. 16-12715, 2019 WL 2219733, at *4 (E.D. Mich. Feb. 27, 2019), *adopted*, 2019 WL 1552480 (E.D. Mich. Apr. 10, 2019). Whether Lippett was deterred is irrelevant.  *Id.* (citing *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007)).

19

The medical chart stated that Lippett was "doing all this" as "part of [his] lawsuit."  Viewing the evidence in Lippett's favor, a reasonable juror could conclude that Duncan fabricated that statement in retaliation for the lawsuit.  Although Duncan stated that he included the note because Lippett's reasons for seeking medical care were relevant, this only raises a question of fact about Duncan's motivations.  *See* ECF No. 27-3, PageID.338.  Duncan also contends that he did not include the note in retaliation for Lippett's 2018 lawsuit because he did not know about the lawsuit until overhearing Lippett mention it before the exam.  ECF No. 27, PageID.288.  But the fact that Duncan referenced the lawsuit in the medical chart shows that he was aware of it.

Given the material questions of fact, the parties' motions for summary judgment on the retaliation claim stemming from the alleged falsification of medical records should be denied.

## IV.   Conclusion

The Court thus **RECOMMENDS** that Lippett's motion for partial summary judgment be **DENIED** (ECF No. 25) and that Duncan's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART** (ECF No. 27).

20

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge


Dated: December 21, 2022


## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2022.


s/Marlena Williams
MARLENA WILLIAMS
Case Manager